IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| VINICIO J. GARCIA,<br>TDCJ-CID No. 1828198 | §<br>§ | |
| Plaintiff, | §<br>§<br>§ | |
| v. | § | 2:25-CV-168-Z-BR |
| SGT. SLACK, *et al.*, | §<br>§ | |
| Defendants. | §<br>§ | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS TO DISMISS COMPLAINT**

Before the Court is the Complaint (ECF 3) filed by Plaintiff Vinicio J. Garcia ("Garcia") against various Defendants, alleging violations of his civil rights. Garcia filed this lawsuit *pro se* while a prisoner in the Clements Unit of the Texas Department of Criminal Justice ("TDCJ"). As such, his lawsuit is subject to preliminary screening as provided by the Prison Litigation Reform Act ("PLRA"). Pursuant to such screening and for the reasons stated below, the Magistrate Judge recommends that Garcia's Complaint be DISMISSED pursuant to 28 U.S.C. §§ 1915 and 1915A.

## I. Standard of Review

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2017); *see also* Section 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *Wilson v. Barrientos*, 926 F.2d 480, 483-84 (5th

Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings).

In evaluating the sufficiency of a complaint, the court accepts well-pleaded factual allegations as true, but does not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). While courts hold *pro se* plaintiffs to a more lenient standard than attorneys when analyzing complaints, such plaintiffs still must plead factual allegations that raise the right to relief above a speculative level. *Id.* (*citing Taylor v. Books A Million, Inc*., 296 F.3d 376, 378 (5th Cir. 2002)).

## II. Legal Analysis

### A. Factual Background.[1]

Garcia alleges that he has been harassed by prison officers for years for filing grievances. (ECF 3 at 4). In what he claims is the latest round of harassment and retaliation, he contends that Defendants Bryan J. Janow, Jesus A. Jimenez, Jose L. Torres, Traina L. Slack, Israel E. Barajas, Courtney Jarman and William Miller kept him in a flooded cell for 120 days, including five days of sewage flooding, and refused his repeated requests to move to another cell. (*Id*.; ECF 5 at 7). He also complains that, solely to harass him, these Defendants placed a dangerous prisoner in his cell. (ECF 3 at 4). In addition, these Defendants, on a weekly basis, allegedly refused to let him leave the dayroom to use the bathroom. (ECF 5 at 4; ECF 10 at 2). Lastly, he complains that Defendants Angelique Turner, Adam Gonzales, Ebenezer Olowomeye, William Jones, Stephanie Patton and J. Back refused to address these issues after Garcia filed grievances about them, and

[1] These background facts are taken from Garcia's Complaint (ECF 3), his supplement (ECF 5) and questionnaire responses (ECF 10) and are presumed to be true for the purposes of screening.

that they ignored video evidence that substantiated Garcia's claims. (ECF 3 at 4). He seeks compensatory and punitive damages as a result of Defendants' conduct.

**B. Statute of Limitations.**

Civil rights claims under Section 1983 are governed by the two-year statute of limitations provided by Texas law. *See Winfrey v. Rogers*, 901 F.3d 483, 492 (5th Cir. 2018); TEX. CIV. PRAC. & REM. CODE § 16.003(a). The two-year limitations period "begins to run once the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Matter of Hoffman*, 955 F.3d 440, 444 (5th Cir. 2020) (cleaned up). A complaint that is plainly untimely is subject to dismissal as legally frivolous. *See Frame v. City of Arlington*, 657 F.3d 215, 240 (5th Cir. 2011) ("a complaint may be subject to dismissal if its allegations affirmatively demonstrate that the plaintiff's claims are barred by the statute of limitations and fail to raise some basis for tolling"); *Gartell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993). When reviewing a case brought under 28 U.S.C. § 1915 or 28 U.S.C. § 1915A, the court has a special duty to examine the pleadings and thus may raise the limitations defense *sua sponte*. *Rogers v. Ikpo*, No. 4:24-2842, 2025 WL 1476549 (S.D. Tex. May 22, 2025) (citing *LeBouef v. Island Operating Co., Inc.*, 342 F. App'x 983, 984 & n.1 (5th Cir. 2009)).

Here, Garcia signed his complaint on July 23, 2025. (ECF 3 at 5). The two-year statute of limitations thus bars all claims that accrued before July 23, 2023. Because all of Garcia's claims other than the flooding cell appear to have occurred in 2022 and early 2023, such claims are time-barred and should be dismissed. However, out of an abundance of caution due to Garcia's *pro se* status, the Court has evaluated his claims on their merits and determined that he failed to state a constitutional violation even if his claims were timely.

**C. Retaliation.**

Garcia alleges that Defendants retaliated against him in the above-described ways because he filed numerous grievances. A valid retaliation claim requires a plaintiff to allege that: (1) he exercised a specific constitutional right; (2) the defendant intended to retaliate against him because he exercised that right; (3) he experienced a retaliatory adverse act; and (4) the adverse act would not have occurred but for a retaliatory motive. *Welsh v. Cammack,* No. 23-10961, 2024 WL 3649583 at *5 (5th Cir. 2024) (citing *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999)). Conclusory allegations, including a prisoner's personal belief that he is the victim of retaliation, are insufficient to support a claim for retaliation. *Jones*, 188 F.3d at 325 (citing *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). Instead, "[t]he inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.'" *Haddix v. Kerss*, 203 F. App'x 551, 554 (5th Cir. 2006) (quoting *Woods*, 60 F.3d at 1166). In evaluating such claims, the Fifth Circuit has cautioned that "prisoners' claims of retaliation are regarded with skepticism" and should be "carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citing *Woods*, 60 F.3d at 1166).

At the outset, the Court notes that filing a grievance can qualify as constitutionally protected activity. *Gonzales v. Gross*, 779 F. App'x 227, 230 (5th Cir. 2019) (per curiam) (quoting *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018)). A prisoner "does not have a right to file a frivolous grievance, [however,] and a frivolous grievance" regarding matters that do not implicate the prisoner's constitutional rights cannot form the basis of a Section 1983 retaliation claim. *Mitchell v. Miller-Roach*, No. 3:10-CV-1762-K-BK, 2011 WL 2273509, at *3 (N.D. Tex. May 17, 2011), *R. & R. adopted by* 2011 WL 2292247 (N.D. Tex. June 8, 2011).

Consequently, courts have rejected prisoners' retaliation claims where the subject matter of the grievance was not related to a federally-protected constitutional right. *See, e.g., Lee v. Richland Par. Det. Ctr.*,483 F. App'x 904, 905-06 (5th Cir. 2012) (per curiam) (affirming dismissal of detainee's retaliation claim because the grievances (which did not directly implicate a constitutional right) "were frivolous" and therefore could "not comprise the basis of a retaliation claim"); *Bernard v. Brannigan*, No. 2:05CV0014, 2005 WL 1422153, at *2 (N.D. Tex. June 14, 2005) (reasoning that, because prisoner "does not have a federally-protected constitutional right to the enforcement of prison dress codes for the guards," a grievance "on the issue will not support a claim of retaliation"); *Brown v. Craven*, No. 2:03-CV-0048, 2003 WL 22511356, at *3 (N.D. Tex. Nov. 5, 2003) (dismissing retaliation claim where prisoner alleged that defendant retaliated after he threatened to write a grievance against defendant for turning off his television, noting that prisoner's "threat to file a clearly frivolous grievance against defendant ... does not [even] rise to the level ... of unprotected 'secondary litigation activity' "), *aff'd* 106 F. App'x 257 (5th Cir. 2004).

In this case, Garcia has not provided copies of the grievances that he claims motivated Defendants' retaliation; however, his Complaint, supplement and questionnaire responses describe the general contents of the grievances. (*See* ECF 5 at 1). As shown below, none of the grievances alleges a constitutional violation; accordingly, his retaliation claim fails and should be dismissed.[2]

**D. Conditions of Confinement.**

Garcia alleges that Defendants Jimenez, Janow, Slack, Torres, Barajas, Miller and Jarman are responsible for holding him in unconstitutional conditions of confinement. As shown below, he fails to state a claim against these Defendants.

---

[2]In addition, Garcia provides no allegations indicating direct evidence of retaliatory motive, nor does he allege a chronology of events from which retaliation may plausibly be inferred. *Woods*, 60 F.3d at 1166.

**1. Potentially Dangerous Cellmate.**

Garcia alleges that these Defendants repeatedly moved a potentially dangerous inmate into his cell in 2022. Garcia was warned by other inmates that the cellmate was dangerous, and the cellmate claimed to be a Satan worshipper who "made strange sounds." (ECF 10 at 19). Garcia claims that these Defendants failed to protect him from potential harm by refusing to remove the cellmate. Although this claim is barred by limitations, it also fails on the merits.

Prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994); *see also Horton v. Cockrell*, 70 F.3d 397, 400-02 (5th Cir. 1995). Pursuant to *Farmer*, an inmate "must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials were deliberately indifferent to the inmate's safety. *Id*. at 834. The Eighth Amendment standard enunciated in *Farmer* applies to a prisoner's claim that prison officials failed to protect him from harm inflicted by other inmates. However, only deliberate indifference, "an unnecessary and wanton infliction of pain or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847-48.

Garcia admits that he suffered no physical injury as a result of these Defendants' purported failure to protect him. He alleges only that the cellmate stole his antiperspirant and underwear in 2022. (ECF 10 at 24-25). In a failure to protect claim, a physical injury is required to demonstrate a constitutional violation. *See Walzier v. McMullen*, 333 F. App'x 848, 851 (5th Cir. 2009) (upholding summary judgment in favor of the defendants where there was no proof of harm to the

plaintiff from other inmates and, "[a]bsent a showing that other inmates harmed [the plaintiff], there is no factual basis for a failure to protect claim"); *Castellano v. Treon*, 79 F. App'x 6, 7 (5th Cir. 2003) (inmate's failure-to-protect claim fails because "he concedes that he suffered no actual physical injury resulting from the prison officials' purported failure to protect"). Because Garcia suffered no physical injury, he cannot state a constitutional violation for Defendants' failure to protect him from his cellmate. This claim should be dismissed as frivolous.

**2. Flooding and sewage.**

Garcia alleges that he was left in a cell for 120 days that had a leaking pipe chase behind the toilet. The water would build up along the back of the cell until it reached the shower drain. Garcia used his towel to move as much water as he could to the drain so that he could step onto his bed without splashing through water. (ECF 10 at 6). Occasionally, however, the water got deep enough that it would get "in the boots" and worms would appear. (*Id.*). For five days, his toilet backed up and his cell was flooded with sewage to an unspecified degree, but a plumber solved the sewage problem. (ECF 5 at 7).

"[T]he Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989), *cert. denied*, 493 U.S. 969 (1989) (citation omitted). Prison officials have certain duties under the Eighth Amendment, but these duties are only to provide prisoners with "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care...." *Woods v. Edwards*, 51 F.3d 577, 581 n.10 (5th Cir. 1995) (quoting *Farmer*, 511 U.S. at 832). There is no static test to determine whether conditions of confinement are cruel and unusual, but punishment rises to the level of a constitutional violation if the conditions are "'so serious as to deprive [plaintiff] of the minimal measure of life's

necessities.'" *Alexander v. Tippah County*, 351 F.3d 626, 630 (5th Cir. 2003) (quoting *Woods*, 51 F.3d at 581).

Considering the "totality of the circumstances," Garcia's claims do not rise to the level of a constitutional violation. *McCord v. Maggio*, 910 F.2d 1248 (5th Cir. 1990). Garcia has not identified any "basic human need" which he was denied for an unreasonable period of time. *See Woods*, 51 F.3d at 581. A cell with a leaking pipe, without more, does not rise to the level of a constitutional violation. *See Cotton v. Taylor*, 176 F.3d 479, 1999 WL 155652, at *2 (5th Cir. 1999) (per curiam) (unpublished) (conditions of confinement violated Eighth Amendment where plaintiffs testified that, due to leaking roofs, "there was so much water on the floor at times that the electrical receptacles would spark and smoke and that they feared electrocution."). The conditions alleged by Garcia, while unpleasant, do not rise to a level of seriousness constituting a constitutional violation.

Garcia also fails to identify a specific injury he sustained as a result of the water on the floor, beyond general discomfort. He states that, although he slipped on the wet floor once, he was not hurt. (ECF 10 at 7). A plaintiff must demonstrate not only that he was exposed to a substantial risk of serious harm, but also that he actually suffered some harm that was more than *de minimis*. *Alexander*, 351 F.3d at 630-31. Garcia fails to meet this standard; as a result, this claim should be dismissed as frivolous.

**3. Bathroom Trips.**

Garcia next alleges that these Defendants refused his requests to let him go to the bathroom while he was in the dayroom, which did not have a toilet. (ECF 5 at 4). He was in the dayroom anywhere from two to six hours at a time. (ECF 10 at 1). He states that he "experienced pain and stress for no reason other than retaliation." (ECF 5 at 4). Eventually, when he was not given access

to a bathroom, he began to urinate out a hole in the back door that led to the caged recreation area. (ECF 10 at 2).

The continued refusal to provide an inmate necessary access to a bathroom for a significant period of time could rise to the level of a constitutional deprivation, but a single or temporary deprivation of toilet access does not generally give rise to an actionable constitutional claim. *Beckendorf v. Fleischman*, No. 21-1357, 2025 WL 842970 *4 (E.D. La. Mar. 18, 2025) and cases cited therein.[3] Further, the inmate still must show that the denial of access involved indifference to a substantial risk of serious harm to his health or safety. *Farmer*, 511 U.S. at 837.

In *Vacca v. Scott*, 119 F. App'x 678 (5th Cir. 2005), the Fifth Circuit considered the repeated denial of an inmate's request for access to a bathroom that resulted in the inmate soiling himself. The court found no constitutional violation because the inmate did not allege an actual "risk to his present and future health." *Vacca*, 119 F. App'x at 679. Here, Garcia alleges his access to a bathroom was limited only while he was in the dayroom, and, even while there, he found a place to relieve himself. He does not allege that he was forced to soil himself or that he was injured by his inability to visit a bathroom on these occasions. *See, e.g., Mendoza v. Atwell*, No. 20-cv-42, 2020 WL 8514099, at *4 (S.D. Tex. Sep. 21, 2020) (defendant's actions were reprehensible in denying plaintiff access to the restroom, which resulted in plaintiff soiling himself, but plaintiff

---

[3] *See Tyree v. Brooks*, 2009 WL 2232455, at *2 (W.D. Va. July 24, 2009) (holding that "denial of bathroom privileges for just over five hours while being transported between prisons is not a denial of a minimal measure of life's necessities."); *Smith v. Boyd*, 2012 WL 3230646, at *9 (M.D. Ala. July 5, 2012) (holding the Eighth Amendment not violated when an inmate was denied access to restroom for several hours while a search was being conducted, inasmuch as no injury was suffered); *Rouse v. Caruso*, 2011 WL 918327, at *12 (E.D. Mich. Feb. 18, 2011) (court found that denial of bathroom privileges for six to eight hours did not violate Eighth Amendment); *Hernandez v. Battaglia*, 673 F. Supp. 2d 673, 677 (N.D. Ill. 2009) (denial of bathroom break during three to five hour period of cell shakedown did not state Eighth Amendment claim); *Owens v. Padilla*, 2008 WL 3916068, at *4 (N.D. Cal. Aug. 22, 2008) (confinement in prison barbershop for six hours without access to bathroom did not state Eighth Amendment claim); *Trevino v. Jones*, 2007 WL 710213, at *8 (N.D. Okla. Mar. 6, 2007) (use of restrooms only twice during eight-hour period does not constitute cruel and unusual punishment).

failed to allege an Eighth Amendment violation where there were no allegations of physical injury); *Decker v. Dumbar*, 633 F. Supp. 2d 317, 341-42 (E.D. Tex. 2008) (inmate who urinated on himself after being denied access to a restroom did not suffer more than *de minimis* physical injury); *Davis v. Holtzclaw*, 2:16-cv-221, 2016 WL 1706936 (N.D. Ga. Oct. 14, 2016) (collecting cases). Garcia admits that he suffered no physical injury or risk to his present or future health.[4] At most, he alleges temporary discomfort based on the restrictions imposed. (*See* ECF 10 at 2). Thus, Garcia fails to allege a constitutional violation.

**4. Housing Complaints.**

Lastly, Garcia alleges that he was denied the ability to refuse a cool bed by unspecified Defendants. (ECF 5 at 4, 9). He does not state which Defendant, if any, did not allow him to refuse a cool bed, other than to state that Gonzales asked him to fill out a form. (*Id*.). Garcia does not state a constitutional violation against either Gonzales. Prisoners do not have a constitutional right to choose where they are housed. *See McKnight v. MTC*, No. 3:15-cv-1647, 2015 WL 7730995, at *3 (N.D. Tex. Nov. 9, 2015) ("It is well-settled that prisoners do not have a constitutional right to choose their place of confinement, security classification, housing assignment, and cellmate.") (citing *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983)). This claim should be dismissed as frivolous.

**E. Grievances.**

Garcia next complains that, in 2022 and 2023, Gonzales, Olomoweye, Back, Patton and Turner failed to respond properly to his grievances at both Step 1 and Step 2. (ECF 10 at 20-21, 25-28). In short, Garcia's allegations against this group of Defendants amount to nothing more

---

[4]Garcia also alleges that Slack placed him in a holding cell on November 15, 2023, for several hours and he was unable to go to the bathroom while there. He claims that he was in pain from being unable to urinate but again alleges no resulting physical injury. (ECF 10 at 14).

than a claim that they did not resolve Garcia's grievances to his satisfaction. "Prisoners do not have a federally protected liberty interest in having these grievances resolved to [their] satisfaction, and an alleged § 1983 due process violation for failure to investigate grievances is indisputably meritless." *Hill v. Walker*, 718 F. App'x 243, 250 (5th Cir. 2018) (internal quotations omitted). The Fifth Circuit has stated that an alleged violation of a prisoner's due process rights resulting from prison grievance procedures is a "legally nonexistent interest." *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Further, even an intentional cover-up does not amount to a constitutional violation. *See Cunningham v. de la Vaga*, 131 F.3d 141 (5th Cir. 1997) (per curiam) ("Regarding Cunningham's contention that the defendants conspired to cover up the attack …, Cunningham has not shown that the defendants violated any constitutionally protected right."). Accordingly, assuming the truth of Garcia's Complaint, his allegations against these Defendants regarding their improper handling of his grievances fail to state a claim even if the allegations are not barred by limitations. This claim should be dismissed as frivolous.

**F. Access to Court.**

Garcia alleges that Jarman denied him access to the courts by refusing to let him out of his cell to visit the law library. (ECF 10 at 16-17, 27).[5] The right of access to the courts requires that inmates be allowed a reasonably adequate opportunity to file non-frivolous cases challenging their convictions and the conditions of their confinement. *Jones*, 188 F.3d at 325. A plaintiff must show that an "actionable claim [involving a challenge to a sentence or conditions of confinement] which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented ...." *Lewis v. Casey*, 518 U.S. 343, 356 (1996); *see also Eason v. Thaler*, 73 F.3d

[5]Garcia also alleges that Jarman refused to open his cell door when she opened other doors in April 2023. (ECF 10 at 27). Such claim, without more, does not state a constitutional violation.

1322, 1328 (5th Cir. 1996) (holding that, to state a sufficient claim of denial of access to the courts, plaintiff must demonstrate that his position as a litigant was prejudiced as a direct result of the denial of access).

The "injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. Rather, a plaintiff must demonstrate that the lack of access has prevented him from filing, or caused him to lose, a pending case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action under Section 1983. *Id*. at 353-54 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)). As the right of access to the courts is not a "freestanding right," he must demonstrate actual injury resulting from the alleged denial of access. *Id*. at 351. Without a showing of an actual injury, plaintiffs lack standing to pursue claimed denials of access to courts. *Id*. at 349. Garcia fails to meet this standard. He does not assert that the inability to leave his cell prevented him from filing a lawsuit. Nor does he state that any pending lawsuits were dismissed as a result of the conduct of which he complains. In short, he has not shown that his ability to pursue a nonfrivolous or arguable legal claim was hindered by Jarman. Accordingly, Garcia has failed to state a plausible claim that he was denied access to the courts and his claim should be dismissed as frivolous.

**G. Access to Religious Services.**

Garcia alleges that Jarman failed to open his cell door to allow him to attend church services and that such action violated his First Amendment right to freely exercise his religion. (ECF 10 at 14-16). He does not know the dates or how often he was denied access to services, but knows that he was denied the ability to attend a church service on August 31, 2022 and February 21, 2023. (ECF 10 at 16, 25). His Step 2 grievance on the issue was returned to him on February 13, 2024. (ECF 5 at 11). At best, Garcia alleges that he was sporadically denied access to religious services

by Jarman and other unnamed guards. (ECF 10 at 15).

The First Amendment provides that Congress shall make no law respecting the establishment of religion or prohibiting the free exercise thereof. U.S. CONST., AMEND I. While prisoners retain their First Amendment rights, including the right to free exercise of religion and limited rights to free speech, they only retain those rights that "are not inconsistent with [their] status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

However, "these [First Amendment] rights must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). "Accordingly, prisoners and their correspondents enjoy the protections of the First Amendment except to the extent that prison regulations curtailing those protections are 'reasonably related to legitimate penological interests.'" *Prison Legal News v. Livingston*, 683 F.3d 201, 214 (5th Cir. 2012) (quoting *Thornburgh*, 490 U.S. at 404); *Brewer v. Wilkinson*, 3 F.3d 816, 820-21, 825-26 (5th Cir. 1993). Garcia, however, admits that Jarman was not acting in accordance with TDCJ policy and that applicable policy is in line with the U.S. Constitution. (ECF 10 at 16).

Further, he does not allege that Jarman prevented him from practicing his religion; instead, she simply prevented him from worshiping with others on a sporadic basis. The Fifth Circuit has held single incidents of missing religious services are generally not treated as First Amendment violations. *See, e.g., Green v. McKaskle*, 788 F.2d 1116, 1126 (5th Cir. 1986) (fact that inmate could not attend all of the religious services he wanted and was occasionally prevented by circumstances from attending services did not amount to a constitutional violation); *Williams v. Bragg*, 537 F. App'x 468 (5th Cir. 2013) (cancellation of several Muslim services for security

reasons did not violate prisoner's rights under the First Amendment or substantially burden his right of free exercise under the Religious Freedom Restoration Act); *Houlihan v. Moyihan*, No. 87-C-3779, 1989 WL 75459 (N.D. Ill. June 27, 1989) ("A prisoner who occasionally is kept from attending church is not denied a reasonable opportunity to practice his religion so long as he is accorded regular access to religious services."). Garcia's First Amendment claim fails and should be dismissed as frivolous.

**H. Leave to Amend.**

Ordinarily, a *pro se* plaintiff should be granted leave to amend his complaint prior to dismissal. *Brewster*, 587 F.3d at 767-68. The district court is not required to allow such an opportunity, though, if the prisoner's claims are clearly frivolous, *Eason*, 14 F.3d at 9, or if the prisoner has pleaded his best case in the current complaint. *Mendoza-Tarango v. Flores*, 982 F.3d 395, 402 (5th Cir. 2020). Garcia has fully responded to the Court's questionnaire and has clearly stated his best case. Under these circumstances, the Court concludes that granting leave to amend would be futile and cause needless delay.[6]

## III. Recommendation

For the reasons stated above, the Magistrate Judge concludes that Garcia's claims should be DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## IV. Instructions for Service

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

---

[6] That notwithstanding, the 14-day objection period will permit Garcia the opportunity to proffer factual and/or legal bases, if any, to cure the deficiencies in his claims outlined herein.

ENTERED July 15, 2026.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

*** NOTICE OF RIGHT TO OBJECT ***

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).